Madelin Routh LOVING et vir, Appellants,

v.

Edyth MEACHAM et vir, Appellees.

No. 6477.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 28, 1955.

Rehearing Denied March 28, 1955.

Simpson, Clayton & Fullingim, Amarillo, for appellants.

Snodgrass & Calhoun, Amarillo, for appellees.

PITTS, Chief Justice.

This is an appeal from a judgment for personal damages in the sum of $12,500 as a result of a collision between a pedestrian and a motor vehicle at the intersection of Polk and Seventh Streets in the City of Amarillo, Texas, during the noon hour on October 31, 1951. Appellees, Mrs. Edyth Meacham and husband, Joe Meacham, filed suit against appellants, Mrs. Madelin Routh Loving and husband, Dan H. Loving, for personal damages in the total sum of $78,655, on the alleged grounds that appellant, Mrs. Loving, negligently operated

her motor vehicle on the occasion in question in such a manner as to cause it to collide with appellee, Mrs. Meacham, as a pedestrian, knock her down and seriously injure her. Appellants joined issues with appellees and charged that appellee, Mrs. Meacham, was guilty of contributory negligence which caused the collision that resulted in her own injuries on the occasion in question.

The record reveals that the collision occurred during a rain drizzle, at a busy street intersection where the traffic was controlled by the usual traffic light signals hanging approximately 12 or 14 feet high over the center of the street intersection in question. The showing of a green light authorized pedestrians and motor traffic to move, a red light required pedestrians and motor traffic to stop and wait and the two light signals were separated briefly by a yellow or amber light which meant "caution." The said lights were operating consistently on the occasion in question and the interested parties, all being local residents, were familiar with the operation of the traffic lights at the time and place of the collision. On the occasion in question, Amarillo was engaged in a "United Red Feather" campaign and as a spirited community move to stimulate interest in the campaign somebody, presumably with authority, had placed a large, boxed-up sign, with a red feather barometer pictured on each side, under the traffic light in the middle of the street intersection in question, for the purpose of showing the periodical progress being made in the said Red Feather campaign drive. The said boxed-up sign was four feet square at the base, tapered very slightly to the top, and extended up to within 2½ or 3 feet of the traffic street lights. In crossing the street intersection, the closer a person approached the said sign from any direction, the more his vision was obstructed from the opposite side. The record contains a picture of the said sign, which, together with the record otherwise, shows the presence of the sign at such a busy street intersection prevented clear vision of people using the streets there and thus created a hazardous traffic condition by reason of its existence there. It was admitted before the court, that, for some reason, the said sign was removed soon after this collision occurred and no other such sign has since been placed in a city street intersection in support of a campaign to raise funds in Amarillo.

The record likewise reveals that Polk Street is 52 feet wide and Seventh Street is 51.8 feet wide at the street intersection in question. Mrs. Loving was operating her 1946 Ford Automobile west on Seventh Street within her proper lane thereof and Mrs. Meacham was a pedestrian walking north in the pedestrians' lane across Seventh Street and on the west side of Polk Street, when the collision occurred a little north of the center of Seventh Street and immediately west of the west line of Polk Street. Mrs. Meacham, according to her testimony, was 57 years of age and partially blind with only 12% vision, or had a condition known as "Light Perception" which means the vision helps slightly. On the occasion in question, she was accompanied by what is known as a "Seeing Eye" dog or a guide dog.

The case was tried to a jury which found in effect that Mrs. Loving had previously stopped on Seventh Street for a red light to change before proceeding west thereafter on a green light immediately prior to the collision but that she failed to keep a proper lookout for pedestrians as she passed through the street intersection and that such failure was a proximate cause of the collision, which resulted in the damages. It further found in effect that Mrs. Meacham attempted to cross Seventh Street in a northerly direction against a red light and at a time when a green light was showing, authorizing the movement of east-west traffic on Seventh Street, and her attempt to do so was a proximate cause of the collision. The jury further found that Mrs. Meacham did not enter the street intersection going north at a time when there was a green traffic light authorizing the movement of east-west traffic on Seventh Street. The jury likewise found that the Red Feather sign in

the middle of the street obstructed the view of Mrs. Loving as she drove through the street intersection but that such was not the sole proximate cause of the collision. It further found that the collision was not the result of an unavoidable accident and that Mrs. Meacham was damaged in the sum of $12,500 as a result of the collision. Both parties moved for judgment upon the jury verdict but the trial court rendered judgment for appellees, from which appellants have perfected an appeal.

Appellants contend first that Mrs. Meacham was guilty of negligence per se in attempting to cross Seventh Street against a red signal light on the occasion in question as found by the jury, which act the jury also found was a proximate cause of the collision, for which reasons appellees are precluded from recovery and judgment should have been rendered accordingly. They further contend in the alternative that the trial court's judgment should be reversed and the cause remanded because of an irreconcilable conflict in answers given by the jury to two special issues. In an effort to determine the question raised by the first contention made, we must resort to the Uniform Traffic Regulations of the State Statutes, since the record does not reveal enough of the City Ordinances introduced in evidence to determine the matter. Article 6701d, V.A.C.S., consists of 156 different sections which control the material traffic regulations here involved. Section 26 of the said Article provides that the provisions thereof shall uniformly prevail throughout the State, including political subdivisions and municipalities, and no local authority shall enact or try to enforce any ordinances, rules or regulations in conflict with such State Statutes. Section 22 of the said Article provides that a failure to comply with any of the provisions of the Act here involved shall constitute a misdemeanor. Subdivision (a) of Section 143 of said Article likewise makes a violation of any of the provisions of the Act a misdemeanor unless such violation is made a felony by the provisions of the Act and Subdivision (b) of the said section fixes the penalty for such mis-

demeanor violations. Various subdivisions of Section 33 govern the observance of traffic signal lights at road and street intersections. We find that a red light means "stop," a green light means "go," and a yellow light means "caution." Par. 2 of Subdivision (b) of Section 33 advises pedestrians facing a yellow or caution light to yield the right-of-way at an intersection to all motor vehicles before starting across. Subdivision (c) of Section 33 controls the use of red light signals at an intersection and Par. 2 thereof prohibits a pedestrian from attempting to proceed across an intersection against a red light unless such can be done safely and without interfering with any vehicular traffic. The evidence here reveals that Mrs. Meacham attempted to proceed across a street intersection against a red light when it was unsafe to do so because of vehicular traffic legally moving east and west at the intersection. The jury found in effect that Mrs. Meacham attempted to cross Seventh Street going north on a red light when Mrs. Loving was proceeding on Seventh Street on a green light going west at the time the collision occurred. According to the law cited and under the jury findings just cited, Mrs. Loving had a legal right to the right-of-way on the occasion in question and Mrs. Meacham did not have such a legal right. Under the jury findings last cited, Mrs. Meacham, by her acts, violated a part of the Uniform Traffic Regulations as provided for in Section 33 and when the provisions of Section 33 are construed together with other provisions of Article 6701d, as we are required to do, Mrs. Meacham was guilty not only of having violated some of the provisions of the Act but she was also guilty of a misdemeanor.

The record does not reflect any violation of any provisions of the Act by Mrs. Loving, although she was found by the jury to be guilty of negligence in failing to keep a proper lookout. The record reveals that Mrs. Loving had the local traffic officers called immediately to the scene of the collision and that the local County Sheriff also went to the scene of the collision. The said officers inspected the scene of the

collision and talked to Mrs. Loving and others present, as a result of which no charges of any nature were filed against Mrs. Loving.

 Usually, contributory negligence and proximate cause as a result thereof are questions of fact to be determined by the jury but such is not the case where the acts of the parties charged constitute a violation of the law or when the acts and circumstances are such that in the opinion of the court reasonable minds could not arrive at a different conclusion. Texas & N. O. R. Co. v. Stewart, Tex.Civ.App., 248 S.W.2d 177, and other authorities there cited. In the case of Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 621, the Texas Supreme Court said in part:

> " 'In order that an act shall be deemed negligent per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it.' "

According to the last rule cited, other rules of law cited and the findings of the jury last above referred to, which have not been challenged on grounds of insufficient evidence, in our opinion, Mrs. Meacham was guilty of negligence per se in attempting to cross the street intersection against a red light for both reasons set forth in the last rule cited, namely, her said act so committed was contrary to her statutory duty and also such act of hers was so opposed to the dictates of common prudence that no careful person of ordinary care would have committed it. In our opinion, prudent people in the exercise of ordinary care do not attempt to cross a busy street intersection against a red signal light.

 Appellees seem to contend that Mrs. Meacham's acts of impropriety, if any, may be excused to some extent at least by reason of the provisions of Section 2 of Article 6701e. That provision of the Statute imposes a greater duty of precau-

tion upon an operator of a motor vehicle to avoid injury when a pedestrian is observed crossing a street intersection guided by a "Seeing Eye" dog, but such statute does not reduce the responsibilities of careful procedure of the pedestrian. The provisions of Section 3 of the same Article concerns the rights of totally or partially blind people who cross the street without a guide dog or a white cane. Under such circumstances, such people are there given equal rights and privileges of normal people by reason of such statutory provisions. We know of no rules of law which accord blind people or partially blind people any more rights and privileges than are accorded normal people under such facts and circumstances as are here presented. However, all parties interested in this case have manifested sympathy for Mrs. Meacham and have performed their respective duties seemingly with tender care and kindly feelings toward her. An unfortunate, pathetic situation is here presented. According to the record, Mrs. Meacham's husband is a disabled veteran of World War I, which makes the situation more pathetic, but the rules of law must be applied to the rights of people without discrimination.

 The provisions of Section 79 of Article 6701d and Section 2 of Article 6701e impose every precaution upon operators of motor vehicles for the protection of all pedestrians at street crossings and intersections, regardless of who may have the right-of-way. Such motor operators are required to drive cautiously and even stop in an effort to avoid a collision with a pedestrian.

Our examination of the evidence here reveals that Mrs. Loving apparently complied with the provisions of the last statutes referred to as carefully as she probably could have under the existing conditions. In our opinion, the matters here presented can be better understood if a brief statement of the facts, as shown by an overwhelming weight of the evidence, is given more fully.

The evidence reveals that Mrs. Meacham was engaged in the real estate business and particularly in handling rentals of improved realty. She was attending to downtown business matters on the occasion in question. According to the evidence, she approached the street intersection in question from the south and on the west side of Polk Street with her guide dog. Her dog was accustomed to moving at her command. She gave a command to the dog to move forward and they left the south curb of Seventh Street proceeding north across the same after the amber light came on and immediately before the amber changed to red, warning pedestrians and motor traffic moving north and south to stop, and at the same time permitting pedestrians and motor traffic to move on Seventh Street east and west on a green light. According to the record and the authorities cited, Mrs. Meacham and her dog left the south curb of Seventh Street at a time when they should have yielded the right-of-way to east-west traffic. However, Mrs. Meacham and her dog were soon moving north on a red light in the pedestrians' lane after other pedestrians had cleared the street intersection. As they approached the center of Seventh Street they were behind the Red Feather sign from Mrs. Loving, who was moving west on Seventh Street with a green light in her favor and at a reasonable rate of speed. The collision occurred only a few feet north of the center of Seventh Street and immediately after Mrs. Meacham had moved past the Red Feather sign, which had obstructed the view of Mrs. Loving, to a position where Mrs. Loving saw her only a split second before or almost simultaneously with the collision. Mrs. Meacham collided with the left front fender of Mrs. Loving's automobile and was knocked to the pavement some 3 to 6 feet from the point of impact where she remained until an ambulance came a few minutes later and took her to the hospital where she remained some two or three weeks. Before the collision occurred, the guide dog was "lagging" behind Mrs. Meacham, as a result of which the dog was not hit by Mrs. Loving's automobile.

Mrs. Josephine Service apparently was in a better position to view the collision and see all that occurred at the time thereof than any other witness who testified. She had just previously stopped her automobile on the south side of Seventh Street in the lane next to the center thereof facing east and was waiting for a red light to change to green, authorizing her to proceed east on Seventh Street through the intersection. Two cars were ahead of her in the same lane. When the light changed to green, the lead car in front of her moved up and turned to the right on Polk Street. She had been slowly following the other car east on the green light for a period of about three seconds when the collision occurred. She had not reached the intersection when the collision occurred and had clear vision to her left where the collision occurred. After the collision, she stopped and remained at the scene of the collision about fifteen minutes. Mrs. Service testified that she did not know either Mrs. Meacham or Mrs. Loving and further testified that she first observed Mrs. Meacham crossing Seventh Street immediately west of the Red Feather sign with her guide dog "lagging" behind her and to her right. She further testified that she saw Mrs. Loving's car approaching at a moderate rate of speed and Mrs. Meacham walked into the middle of the left front fender of Mrs. Loving's automobile and was knocked to the pavement, but the dog did not get hit by Mrs. Loving's automobile and was not hurt. She likewise testified that the impact of the collision threw Mrs. Meacham to the pavement about 5 feet from the point of impact and only a few feet to the left of Mrs. Service's automobile.

Mrs. Loving testified that she was driving west on a green light on Seventh Street at a rate of 10 or 12 miles per hour, crossing the intersection, at which time she did not expect pedestrians to be crossing Seventh Street against a red light, when she saw Mrs. Meacham appear suddenly from behind the Red Feather sign proceeding north; that she put on her brakes and stopped instantly but could not avoid a collision; that she got out of her car im-

mediately, went to Mrs. Meacham and rendered all the assistance possible; that she did not see Mrs. Meacham until she suddenly appeared from behind the Red Feather sign and she did not see the dog, which, according to the testimony of Mrs. Service, was behind and to the right of Mrs. Meacham and Mrs. Loving's view was apparently obscured by the Red Feather sign. The record reveals that. Mrs. Loving is the wife of Dr. Dan H. Loving, a local physician, who soon joined his wife at the scene of the collision, and they both followed the ambulance to the hospital, where they showed a willingness to render any aid possible.

▮ Appellants predicate their claims of a right to judgment denying appellees any recovery upon the jury findings to the effect that Mrs. Meacham attempted to cross Seventh Street on the occasion in question against a red traffic light, which constituted negligence per se, and which was a proximate cause of the collision as found also by the jury. Such contentions could possibly be sustained except for appellants' third point of error charging an irreconcilable conflict between the findings in effect that Mrs. Meacham attempted to cross Seventh Street against a red traffic light and another issue in which the jury found in effect that Mrs. Meacham did not enter the street intersection going in a northerly direction against a red light. Both issues are material and involve the very same act of Mrs. Meacham. If the two findings are in irreconcilable conflict, a fundamental error exists, which would preclude the rendition of a judgment. Appellants contend that the act of entering the intersection going north was an attempt to cross the intersection going north; that the act of entering the intersection going north was for no other purpose than to attempt to cross the intersection and that the two terms mean the same thing and are synonymous. However, the jury found in favor of one and against the other. In support of appellants' contentions they cited only the case of Goad v. Phipps, 324 Ill. App. 160, 57 N.E.2d 528, where the court held that "entering the intersection" and

"approaching the intersection" mean the same thing. In our opinion, appellants make a logical argument to the effect that the two jury findings constitute an irreconcilable conflict upon material matters, for which reason the finding relied upon by appellants in their first and second points to the effect that Mrs. Meacham attempted to cross the street against a red traffic light is a nullity and cannot be considered. The two jury findings in question being in conflict, they are mutually destructive and constitute a fundamental error. Steves Distributing Co. v. Newsom, Tex.Civ.App., 125 S.W.2d 354; Kilgore v. Howe, Tex.Civ. App., 204 S.W.2d 1005, and other authorities cited by these cases. For these reasons, appellants' third point of error is sustained, the judgment of the trial court is reversed and the cause is remanded.